Last case being argued today is People of the State of New York v. Arm or Ally, LLC et al. Mr. Barnes, I see you reserved two minutes rebuttal, and obviously we have the motion for leave to appeal under Section 1292B, and you can incorporate any arguments with respect to that in your time. All right. Good morning, Your Honors, and may it please the Court, Brian Barnes for the defendants. The precursor parts at issue in this appeal are not firearms. Mr. Barnes, actually, I don't want to – I do want you to address this threshold question of whether we should hear this appeal or not at this time. So assuming that the collateral order doctrine does not apply and it's a discretionary decision on our part, Supreme Court, as you know, the exact issue that you want us to decide, has granted cert during argument in a few weeks, I think, in October. So they're going to decide this case during this term, that issue. The two of the defendants here are not federal firearms dealers at all. So the PLCAA issue does not pertain to them. Every defendant has a claim for negligent entrustment against them, which goes forward regardless of how we decide the PLCAA issue. So – and, Judge, on this issue of state law and the application to the PLCAA, Judge Lee is on another panel that has the National Supporting Sports Foundation case. So that issue is before that panel. And our rule is we have to wait for that panel to decide that issue. So how is this going to materially advance the litigation for us to take up both the Gun Control Act issue as well as the PLCAA issue on that type of record? So let me start with 1292B because that's what Your Honor asked about. But I do want to also mention the collateral order doctrine here. So – Well, let's put that aside. Okay. Why – if this is discretionary, how is this going to materially advance this litigation? Is this litigation going to go forward anyway? We have the Supreme Court deciding the key issue that you're presenting to us. We have another panel deciding another part of the appeal that we have to wait for. Why shouldn't we send it back to the district court if the collateral order doctrine does not apply and let this case proceed in discovery? It's going to have to anyway regardless of what we decide on this issue. And let these issues come back at another time potentially. So the scope of the discovery and the scope of the litigation on remand is going to be very materially affected by both of the issues that we presented in the appeal. So for three years of the period in which the defendants are being sued for selling these products, the only theory that the state has presented for how those sales could be unlawful is that they were unlawful under federal law. And so we're talking about a major, major chunk of the relevant time. They argue that they believe they're independently unlawful under state law. They say some of these transactions, they argue, are independently unlawful under state law. But the relevant state laws that they say we violated, their effective dates are multiple years into the period during which we're being sued for selling these products. And so there's a huge amount of conduct here that the only way that that kind of – If the items were not firearms, is this right? It would eliminate for all of the defendants all but one claim for a three-year period, and then you'd just be debating liability over the tail end of the period as it relates to the state laws that were enacted at that time. I think that's basically right, Your Honor. So the point – I have to acknowledge that the way that the state pleaded the complaint, it lumps together what are analytically distinct claims into individual accounts. But the court has to look through the way the state pleaded the individual accounts and recognize that it's a separate claim. When the state comes into court and says the only way that this three-year period of conduct could be illegal is if it was illegal under federal law, that's an analytically separate claim. Can you just walk me through if the Supreme Court finds that these are not firearms under federal law, how is this case then going to play out? Would it be your position then that the PLCAA issues don't have to be decided at all? That is true, Your Honor. So if the Supreme Court says that these are not firearms, then that takes us outside the scope of the PLCAA. Right, it would resolve the immunity, right? Because immunity only applies if you're selling a qualified product, which is a firearm under federal law, right? That's right. A qualified product is a firearm or a component part of a firearm. So why would we address discretionary immunity issues that if the Supreme Court comes out the way you're suggesting we would never have to address? So, you know, one of the few points on which I agree with the district court is I think that the Supreme Court could benefit from this court's views on this question. There's only one court of appeals that's addressed the issue, obviously. They went our way on that issue. But, you know, I do think that certainly the court has the discretion under 1292B to address this issue. And I think that it should. You think our views are likely to influence the Supreme Court? I think they could well, Your Honor. I think that the Supreme Court takes a careful look at thorough and well-reasoned opinions from the court's appeals. When do you think our opinion would come out? They'll hear our argument in like three weeks, right? They'll hear our argument in three weeks. You know, we're probably going to see a decision not until the spring. All right. If you want to address the collateral. I'm actually just curious about what you're saying. So, like, just taking that idea seriously, is there some argument that you are making here that wasn't fully ventilated in the 11th Circuit case? The one thing that makes this case a little bit different from Vanderstock is that there is an attempted retroactive imposition of this interpretation of the Gun Control Act. So, in other words, I think this case presents in a very stark way the hazards of interpreting the Gun Control Act the way the other side does and the consequences of that for, you know, upsetting settled expectations in the industry about what is and isn't a firearm based on prior ATF guidance. It's also kind of a different question, right? Because the 11th Circuit is deciding whether the ATF's definition in the rule is valid or not. And we are deciding whether these particular products qualified as firearms under the Gun Control Act. And that is different. So does that mean it's possible that the Supreme Court could say, well, the definition that the ATF provided was not defensible. But these products, nevertheless, might qualify under a different understanding of what the proper statutory definition is, right? I think that's true, Your Honor. It could have implications for this case, but it might not. You know, I would just point out that the converse is also possible, that if the court says in the abstract the ATF's rule is a permissible interpretation of the federal definition of firearms, nevertheless, the fact that what we have here is an attempted sort of retroactive application of that interpretation could be something that distinguished this case from that one. Let me address that. But you'll get to ask because I'll have questions. But so you're saying even if the Supreme Court says the rule is valid, you would still have arguments for why the retroactive application shouldn't qualify and it shouldn't be considered firearms. I suppose you'd still have the arguments about immunity and whether you've committed a known violation or there's proximate cause and so on. Absolutely. So you're saying regardless of what the Supreme Court says, it would still be live issues that could mislead the advanced litigation because you can't get rid of all of the claims but one for a three-year period against most of the defendants. That's correct, Your Honor. Let me also point out the public nuisance claim. That claim, it's count three of the complaint and the domain of that New York statute is qualified products under the PLCAA. So again, that's a count that can only go forward if the court concludes. Why don't you move to the merits?  May I address the collateral order doctrine? Sure. Your Honor, so the point I want to make here, I think ultimately the collateral order doctrine ends up turning on the question of what the policy is in the PLCAA that Congress adopted. And if we look at the statutory text, you know, a qualified civil liability action may not be brought. It has to be immediately dismissed. And we see in the statement of purpose in the PLCAA the idea of a rogue maverick judicial officer potentially allowing a claim to go forward and crippling the firearms industry as a result. And so those textual indicators, I think, are very strong indicators of the fact that Congress Can you go to merits now?  So let me turn to the firearms issue. And the critical thing on the firearms issue is that there's meaningful variation between subpart A and subpart B of the definition. So we see Congress specifically addressing the issue of the legal status of frames and receivers in subpart B of the definition and not including this readily converted language in subpart B. And that difference between the two portions of the definition has to be given meaning. It's also true that There has to be a difference between it. So it means that part A are things that can be readily converted into a weapon that's capable of launching a projectile. And part B, the implication is that a frame or receiver can't – that phrase can't include something that can be readily converted into a frame or receiver. Otherwise, maybe Congress would have included the language. But there is this argument that an unfinished frame just is a frame. Because in ordinary speech, we might refer to something that looks a lot like a frame even if it's not complete as a frame. So what about that? Yeah, so I think in ordinary speech when we talk about a frame or receiver, what we're talking about is the thing's function. And we can see that most clearly if we look at ATF's prior definition of frame or receiver before the new rule. They defined it as the part that provides the housing for the hammer, bolt, or breach lock in firing mechanism. It's defined in terms of its function. And so a thing that does not provide the housing for the hammer, bolt, or breach lock in the firing mechanism is not in the plain meaning of frame or receiver or frame or receiver. But is it really – I mean just – this is probably not a good example. But going to Judge Bernaschini's point, the idea that just in common language, if you have a bicycle, it's missing a wheel, one of the wheels. That's part of the definition of what a bicycle is. Would someone refer to that, well, that's an unfinished bicycle, or would they just say it's a bicycle? I think it would depend on the context, Your Honor. So if I went to Walmart and purchased a bicycle and I took the box home and I opened the box and I discovered that the thing did not have wheels, I think I would probably have a valid consumer deception claim if Walmart sold me that bicycle as a bicycle. And what's more, the problem with that hypothetical is you need to think about it in terms of I'm taking the parts of the bicycle out of the box and the frame of the bicycle needs further machining for it to function as a bicycle. That's this case. It's not simply just needing to assemble the parts of the bicycle. I'm recognizing that it might depend on context. So if I go to a store and I buy a box of bicycle parts that I'm supposed to assemble at home, you might say I bought a bicycle, but I understood all the implications. But if I say to you, could I borrow a bicycle? I'm going to go to the store and you gave me a bunch of metal parts that I could assemble in an hour to function as a bicycle, I would respond by saying, what are you talking about? I asked for a bicycle. And so you'd expect maybe that you'd have to specify in that context that it wasn't a finished bicycle. So I guess you're acknowledging that there's some context. And here, why does the context point toward the finished frame of receiver? Is it mainly because Part A addresses specifically things that can be converted into a different product and Part B doesn't? And so if we have the choice between the two, we should choose the finished one? It's partly the variation between subpart A and subpart B. And it's also partly just the point I made earlier about the plain meaning of frame of receiver turning on the function of the thing. And if it doesn't function as a frame of receiver in normal parlance, we wouldn't typically describe it as a frame of receiver. But even on that function question, when we talk about things, the fact that there are cases that describe firearms that are inoperable as still being firearms. And if they're not the core function of what the firearm is for, if it is unable to do that, it's inoperable for some reason. That doesn't mean we would necessarily not say, well, this isn't a firearm. Your Honor, I would push back against that and note in the statutory definition it refers not just to any weapon which can expel a projectile, right? It talks about any weapon which will or is designed or may be readily converted to expel a projectile. Why did Congress include those extra words in subpart A? It's exactly because the plain meaning of firearm, if you had a thing that won't function as a firearm, we wouldn't typically describe that as a firearm. Can I ask about the word convert? So it does seem to me that convert generally means to change from one type to another. And it's kind of clear to me that if you take a starter gun which is supposed to fire blanks and you convert it into the kind of gun that launches a projectile, you've converted it from one type of gun to another type of gun. Do you even agree that assembling a thing from component parts is a conversion? No, I don't. So I think assembling the thing – so here's the standard I would apply is if the thing requires additional machining in order for it to become the final product, that's what qualifies as a conversion. If it needs additional machining, then it is a conversion.  Oh, so you are saying that if I have to complete the product, that could qualify – the completion of the product can qualify as a conversion. From an inchoate thing into a completed thing, you think the word conversion covers that? I do, yeah. Okay, so fine. So the issue is not with conversion. The issue is just whether the phrase frame or receiver refers to a finished product. Yeah, now to be clear, on the facts we might have an argument that this is too much of a transformation to even qualify as a conversion, but the issue that we have here is the – So your position is that if there's any machining that has to be applied to an unfinished frame, it's not a frame? That's my frontline argument. I guess I propose a sort of – our frontline point is if it requires additional machining to function as a frame, it's not a frame. I would also offer as sort of a backup, alternative way of interpreting the statute, the approach that ATF took before this new rule was adopted, which was to say you have to reach a certain kind of threshold stage of completion in the machining process. It doesn't depend on how easily converted the thing is to the final stage of being a function. Jan, how do we decide when that threshold is? I mean, I read a lot of the ATF opinions on this question, and it is a little hard to figure out, which is why they ultimately say we do it on a case-by-case basis, and we'll just kind of tell you. Right. I agree. Is there a way to operationalize the concept of a critical stage of manufacture? I don't know that there is, Your Honor, and this is why we agree with the circuit's interpretation of the statute, which is to say if the thing requires additional machining, it's simply not a firearm. But I will note that ATF applying this sort of alternative approach to the specific products that we're talking about in this case, you know, before the new rule was adopted, and, you know, note the new rule is prospective only. It doesn't apply retroactively. It categorized these products as non-firearms. If Section B said a frame or receiver or something that can be readily converted into a frame or receiver, would you say that then these products would qualify? I might be able to dream up a different argument, Your Honor, but I would have a much harder argument. So what do you take about the – what do you take then – does it matter that there's kind of a cross-reference because it says the frame or receiver of any such weapon, and therefore it refers back to a weapon in Subsection A, which might be something that is readily converted? Yeah, and that argument doesn't get the State anywhere because if you say a frame or receiver is a frame or receiver of any such weapon and you replace any such weapon with Subpart A, which is any weapon which will or is designed or may be readily converted to expel a projectile, you still end up in the same place where you have to have a frame or receiver. It's not a frame or receiver. Right, so the readily converted applies to the weapon as a whole. Correct. It doesn't apply to the frame or receiver itself.  And that leads to a kind of an odd result because if you have a bunch of pieces that can be readily converted or some kind of thing that can be readily converted and one of the steps you have to do to readily convert it is to finish machining the frame or receiver, the thing still is a weapon that can be readily converted, but you're saying that still is not a frame or receiver. I would not agree with that, Your Honor. So I think that – Oh, I was saying – oh, sorry. Go ahead. Yeah, so a premise of the way the statute is written is you have to have a finished frame or receiver for the thing to be a firearm. And we can see that, you know, I think it's implicit in the definition of firearm, but you could also look at 923. So you're saying that under Subsection A, it incorporates something that can be readily converted, but the readily convertibility can't involve machining applied to the frame or receiver? Correct, yeah.  Well, so 18 U.S.C. 923I talks about where you have to apply the serial number to anything that qualifies as a firearm, and it says apply the serial number to the frame or receiver. So the presumption in the way this overall statutory sort of scheme is set up is that everything that qualifies as a firearm – Well, I think nevertheless it's true that a frame or receiver, you know, the way 923I is written, it assumes that there's going to be a frame or receiver associated with whatever assemblage of parts or whatever else it is that you have that qualifies as a firearm. All right. If you want to spend one minute on the second issue, the PLCAA? Sure, and let me just focus on the knowingly –  So the word knowingly in the PLCAA's predicate exception modifies violate, and so we read that. I think just the plain text tells us that that is a statute that requires knowledge that the conduct is unlawful. And if we just step back and think about the broader context – Well, knowledge of the elements, right? And one of the elements is that this is a firearm, right? So you're saying it requires knowledge that this is a firearm. Correct. As the statute defines it, they don't have to know about the particular statutes or – Right. So our position is knowingly violates means you have to know that the conduct – They have a threshold argument, which is that this is not even a qualifying civil action because it's not focused upon third parties. It's focused on the direct sale. What's your response to that? Yeah, so that's – I mean, if you read the complaint, that's just not this case. I mean, the very first substantive sentence of the complaint talks about the public health crisis in New York caused by criminals using my client's products. And so that threshold argument just doesn't work on the facts that they've alleged. And the recovery against the defendants is based on what third parties have done with guns in New York. Exactly right, Your Honor. All right, thank you. All right, we'll hear first from the state, Ms. Underwood. The nearly finished frames and receivers manufactured and distributed by these defendants pose virtually the same risks to public safety and the same obstacles to law enforcement as finished frames and receivers because it takes so little time and effort to finish them. Drilling three holes and removing a piece of plastic. And that's how they're marketed, as a way to get a gun without a background check and serial numbers. It doesn't matter whether it poses the same public safety risk. I mean, I don't know that we look at that policy, and I don't even know if that's why frame or receiver is included in the definition of firearm. It just might be that Congress wanted it to be serialized. They thought the frames or receivers standing alone were a public safety risk. So I don't really get the idea that I can infer from the policy consideration that that's what the statute means. Okay, well, what I was going to say is for that reason and perhaps for other reasons, New York City expressly prohibited them in 2020 and New York State in 2022. And as ATF explained in its 22 rule, they have long been treated by federal law when they are close enough to finished as the equivalent of finished as frames and receivers, which are by definition firearms. I want to go right to the point that the three basic claims in this case can all be established without answering the question whether these items are federal firearms or not. And also, it can be determined that the claims are not barred by the PLCA. The three claims, there are three types of claims, I guess is what I'd say. There's that the defendants illegally sold these items. It's that they marketed them by misrepresenting that the sales were legal. And the misrepresentation appears in several different claims, but it's all about misrepresenting that they were legal. And then that by marketing and selling these items, which were, if not firearms, then components of firearms, the defendants created a nuisance under the gun related nuisance statute of the state of New York. So each of those claims survives a motion to dismiss whether or not the products are federal firearms. How can that be right? So if they're not firearms, are they legal products if the marketers did not violate the law by marketing them as legal products? They violate New York City's… That was for the period before the new laws from the state and city kick in, right? So for a three-year period, the legality of the products depends on the federal definition of firearm, right? Well, the negligent entrustment claim, which isn't before this court, doesn't have a time starting point on it. So, I mean, this goes in part to the question about whether you should exercise your discretion, whether you would materially advance the termination of this case. The negligent entrustment is just a claim that these items are sufficiently dangerous and have… And there's a carve-out from the immunity for negligent entrustment. I get that. But most of the claims for a three-year period would be eliminated if it turned out that these were not firearms, right? Well, it depends on how you – there is a – there is a – it varies claim by claim. That is, the illegal sale is illegal only when there's a law, a New York law that prohibits it. So there's a cutoff there. But the – and it goes back further if there's a federal law that violates it as well. The negligent entrustment, which isn't here, goes all the way back. The misrepresentation follows the illegal sale because the misrepresentation is a misrepresentation that the sales were legal. So wherever the illegality of the sales cuts off, that's where the misrepresentation… The legality of the claims, the legality of the sale depends on the federal definition of firearm, right? Yes. That's right. But that doesn't mean that the claim should have been dismissed. That is – No, I understand you have an argument. But I'm just talking about whether it would materially advance litigation, which I thought is what we were talking about. Okay. But the discovery for the negligent entrustment would be – would cover the larger period. So it's not really the case. Why would it? Negligent entrustment has to rely on whether they knew that they were giving the gun to somebody who couldn't be trusted with it, whereas the marketing and sale just involves all of their marketing and sales practices across the entire period, right? Isn't the negligent entrustment claim more focused on evidence about whether they in fact negligently entrusted the product with somebody? Well, it's that it's negligent. Ultimately, it's that it's negligent to entrust a product so readily be turned into a gun to people who haven't undergone a background check and who may be – Oh, so you're saying because your theory is that all of the sales that they made are ipso facto negligent entrustment, it covers the same ground as all the other claims? It covers the same ground if we make out negligent entrustment. Now, that's a factual – that's not for a motion to dismiss. That's – the theory is that it is – Well, I understand that it's not before us, but it might be. You know, there's a question as to whether that is how a negligent entrustment claim could work, but I get the point. Okay. So – and then the arguments – the – I want to say about the nuisance case doesn't actually track perfectly the definition of firearm because it includes a component part of a firearm. And so to – does PLCA reach a component part of a firearm and the exception as well? So that you could have a situation in which they – these objects are not federal firearms, but this nearly finished frame is a component part and is therefore potentially covered by PLCA, but then by the same token exempted from it under the predicate exemption. So I think that's the way that works. I wanted to address the suggestion that the statutory claim that the 6312 claim is not a viable predicate exception because it is not – because it's generally applicable. That's just a misunderstanding of the way 6312 – New York 6312 works. It's a statute that authorizes the attorney general to bring an action to enjoin and otherwise remedy, among other things, violations of law and the specific violations of law need to be pled when it's illegality and they were here. And it's those statutes, the gun-related statutes, that are the basis for the illegality claim. And the fact that 6312 is what authorizes the attorney general to sue on those statutes doesn't turn this from a gun-related – It still has to be an underlying statute that specifically applies to gun dealers, right? Well, it does for those statutes. I mean I'm not saying that it has to be. We have an argument that even the misrepresentation claims, which do not specifically apply – do not on their face specifically apply to gun dealers, comes within the second and third categories of Beretta. Beretta said that a generally applicable statute doesn't have to expressly mention firearms, that it can be a statute that courts have applied to the sale and marketing of firearms, or that it can clearly be said to implicate the purchase and sale of firearms. And under those headings, a misrepresentation claim could – Well, we know there has to be some class of statutes that are covered by the immunity right. There has to be something that is a qualified – that is not a statute that specifically applies to gun dealers, right? That's what the court says. So if it is general statutes about negligence and illegal marketing and so on, if that doesn't qualify, what does? You mean what would be fenced out by that? Yes. A statute that was specific to something else or a statute that was – that had never been applied to the firearm industry before? That's presumably what that second category means. If ordinary consumer protection laws – So you have a kind of general consumer protection statute, and there is some court somewhere that applies it to a gun manufacturer, then all of a sudden it is a statute that applies specifically to gun manufacturers. The court could – I mean, this is not – was not fully fleshed out in Beretta. So, you know, you would have to devise a theory for when a statute is sufficiently understood to apply to the firearm industry to be covered. But I don't need to press the misrepresentation point. I just was really explaining why I don't want to just concede without passing that a misrepresentation claim couldn't be a predicate. All right. Thank you, Ms. Underwood. We'll hear from the Department of Justice. May it please the Court. Lucas Zakra from the United States Attorney's Office for the Southern District of New York, on behalf of Intervenor of the United States. In the Gun Control Act, Congress broadly defined firearm to include any weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive, as well as the frame or receiver of any such weapon. Neither the ordinary meaning of frame or receiver, nor any part of the statutory text, restricts those terms to a fully complete and functional frame or receiver. A frame is the basic structure and principal component of a firearm, and as Judge Lee recognized, for example, that it does not cease to be a frame because it includes a plastic tab blocking the slide rail, for example. A contrary interpretation would render the statute easily circumvented and would lead to absurd results. For example, that frame or receiver with the plastic tab blocking the slide rail or within the fire control cavity would not be a firearm under plaintiff's definition, notwithstanding the fact that removing the plastic tab could convert it to a fully functional frame. Okay, but you just said that the reason why it would be absurd is because removing the plastic tab would convert it. So you're saying that because it's something that can be readily converted into a frame or receiver, it's just covered by the statute. We believe that the ordinary meaning of the term frame or receiver includes an object which any reasonable person would recognize as such. You just said it was going to be converted, right? So what would it be converted from and to? I don't think it's necessary to use the word conversion. I know, but you just did, so I was just curious what you meant by it. What I meant was the removal of the plastic tab would render that object complete and functional. So what you're saying is that when you remove the plastic tab, there is a conversion going on. It's being converted from an unfinished frame into a finished frame, right? Yes, it is an unfinished frame under the plaintiff's definition when it has the plastic tab and it is a finished frame. We would recognize that it is not functional in an immediate sense when it has the plastic tab. Okay, you want to say finished or unfinished or non-functional versus functional. There's kind of a conversion going on. And I think in terms of my colloquy with Mr. Barnes, he acknowledged that in some contexts an unfinished product might be referred to as the name of the product. But in other contexts, you might understand the product to refer to the finished product, right? If I asked to borrow a bicycle to go to the store and you gave me like a bunch of parts, you would not be responsive to my request. So it depends on the context. And here, don't we have a statute where Congress said when we're talking about whether – when we're talking about a weapon, we're talking about things that can be readily converted or are designed to function, to shoot out a projectile by the action of an explosive. But they didn't say that for frame or receiver. So doesn't the context of the phrase frame or receiver in the statute suggest that Congress was not talking about something that could be converted to a functional state, but was talking about the thing itself? I think the inclusion of the term designed or converted in subparagraph A is necessitated by the structure of subparagraph A, which states that it may – the definition would otherwise be limited to weapons that will expel a projectile by the action of an explosive. So because subsection A is defined in terms of the action that will be performed, it is necessary to add additional clarifications about that it includes objects that will – maybe are designed to or may readily be converted to perform that action, because otherwise it might be read to suggest that the object must be presently capable of performing the action. But subsection B is not framed in terms of function. I think this is what my counterpart attempts to – says that the ordinary meaning includes the concept of present functionality. But that doesn't appear in any – in dictionary definitions. That doesn't appear anywhere in the statutory text. It simply says frame or receiver. Just as a bicycle with a plastic tab – Well, it doesn't appear in dictionary definitions, right, because the dictionary definition does define the term frame or receiver in terms of its functionality that can hold the other component parts of the gun. I don't have the definitions in front of me, but the definitions from dictionaries at the time of the Gun Control Act suggested that. Do you not agree with that? No, Your Honor. It's the – it just – the dictionary definitions, I believe, talk about frame or receiver in terms of how it is designed or its intent, in essence. But there is no – there is nothing that you would see in a dictionary definition or in the ordinary meaning of the terms that would say that it is – it must be – Right. So Webster III said the basic unit of a handgun which serves as a mounting for the barrel and operating parts of the arm. And receiver as the metal frame in which the action of a firearm is fitted and which the breech end of the – and to which the breech end of the barrel is attached. So if it serves as a mounting for the barrel or the breech end is attached or the action is fitted, it seems like it is serving the function. So the definitions do seem to suggest that it is serving – that it is serving the function. So, I mean, I don't know if that's dispositive, but it does seem like there are dictionary definitions that define frame or receiver in terms of it being a functional frame or receiver. Again, as Your Honor has noted, it does – one is required to look at the context, but I don't think that anything about those dictionary definitions or, more importantly, the statutory text would suggest that a simple piece of plastic that can be removed within seconds means it no longer serves that function, that it takes it out of the realm of our understanding, that it is, in fact, the principal component and structural – We have these letters from the ATF, right, where it is reviewing products like the Polymer 80 or the PF940C, right? And it does, you know, talk about something that looks a lot like a frame, but it needs to have holes drilled and it needs to have additional steps taken. And it says, well, it's not – it hasn't reached the stage of manufacture where we consider it a frame, right? So you're saying that the ATF was wrong when it offered those opinions all of that time? No, Your Honor, and the ATF's opinions have not changed in that respect. The ATF has consistently stated that frame or receiver blanks that do not have any indexing or machining within the fire control cavity are not firearms, and that continues to be the case today. The ATF issued a clarification letter in September of 2022, for example, in which it made clear that that continued to be the case. The difference today – So we have this letter about the PF940C, and so you're saying what's the difference between this product and the products that the defendants are selling? Again, Your Honor, as we noted – Is it the indexing of where you drill the holes? Is that the difference? I'm sorry? Is it the indexing of where you drill the holes? We're not taking a position at this stage of the litigation that any particular product sold by the defendants is or is not a firearm, but yes, if there is – But isn't that the whole question that we have? I mean, if we entertain this question, like we have to decide whether the defendants' products qualify as firearms, right? Yes, Your Honor. We're engaged at the threshold legal question of whether plaintiffs are correct that there is a requirement of strict completeness before it can be recognized as a frame or receiver and therefore a firearm, and we disagree with that. So whether a particular item – No, I understand that the defendant's primary argument, as he just said, is if there's additional machining, it doesn't count as a frame or receiver, but he said also we'd be happy with the ATF's old rule that there's a critical stage of manufacture where it wouldn't qualify because we think that our products meet that standard. You're saying we should ignore that argument and just decide the first one? No, Your Honor. I think that the defendants are incorrect to suggest that there's been some sort of sharp break with past practice. As the ATF has repeatedly recognized in opinion letters that we cite on pages 6 to 7 of our brief from 1978, 1980, 1983, an unfinished receiver would likely qualify as a firearm if it could be converted to functional condition within a few hours using common hand tools. Where we've drawn that line for the purposes of guidance and clarity is the presence of indexing and machining within the fire control cavity. The key clarification that was made by the 2022 rule is that that indexing and machining does not necessarily have to be present on the fire control cavity itself. It could be present on a plastic jig that is sold with the device that snaps around it to provide exactly the same function of guiding the drill to drill out the necessary fire control cavities. So you're saying the difference between the old rule and this rule is just that whereas previously the indexing had to appear on the frame itself, now it could also appear on a jig attached to the frame? With respect to frame or receiver, that is the functional difference. That's like the whole stakes involved in this case and in the ATF's new rule? That's not necessarily the whole stakes involved in the new rule. The ATF's new rule also gives guidance regarding weapons parts kits, multi-part frames, split frames and receivers, certain other aspects. But as relevant to these products in this case— Okay, but anyway, but the premise of what you just said is that previously the indexing that occurred on the plastic jig would not qualify it as a frame or receiver, right? Previously— But you said the ATF clarified that that's a difference now. Previously the ATF did not consider the presence of a plastic jig. It did not, for example, ask that. Okay, so does that mean at the earlier point in this litigation when the defendants were selling these products, ATF would not have considered those products to be firearms under the federal definition? Again, that's a— Because it all depends on the plastic jig. That's a somewhat fact-specific question, and I'm not sure which of the particular products it issued did have indexing on the jig. Assuming that the difference is the indexing is on a plastic jig attached to the frame or receiver, ATF would not have considered those to be firearms at the time the defendants were selling them. If there was no indexing or machining on the fire control cavity, then under ATF's prior application they would not have viewed that object to be a firearm. All right, thank you. Thank you, Your Honor. All right, Mr. Barnes, you have two minutes in rebuttal. Thank you, Your Honor. Just a few quick points. Judge Menasche, the PF940C is the product that we're being sued for selling. If you look at paragraph 126 of the complaint, the complaint specifically identifies that model. Well, so can I ask you about that? So I'm reading this letter that's dated January 18, 2017 from the ATF, and it has pictures of the model, but it does also say that the product is void of indicators that designate or provide guidance on the completion of the firearm. But I thought your products did. Is that true or not true? That's, you know, there are a lot of defendants and a lot of allegations in the complaint, but on the whole that is not true. The sales that happened here, including, you know, the sales specifically identified in paragraph 126 of the complaint, it's the PF940C. It's the specific product that ATF said was not a firearm. And, you know, we're being retroactively sued for doing something that ATF told us specifically that we could do. I want to address this issue of circumvention, the idea that our interpretation of the statute would circumvent the purpose of the statute. And if we just step back and think about the overarching regulatory scheme, this is a regulatory scheme that does not regulate the secondary market for sales of guns. If I buy a gun at the gun store and later decide I don't want it anymore, I can sell it to my neighbor and there's no background check. It's also a regulatory scheme that doesn't regulate the private manufacturer of firearms. So whoever wins on this issue here or in the Supreme Court or wherever, at the end of the day this is a regulatory scheme that will allow people to construct their own firearms at home without applying a serial number. And so the idea that we're, with our interpretation, creating some sort of massive loophole that wouldn't otherwise be there just is out of touch with the overarching regulatory scheme. The last point I'll make on the collateral order doctrine, I just urge the Court to look carefully at the In Re Academy decision out of the Texas Supreme Court. It cites to a number of collateral order doctrine precedents from the federal courts and it's applying mandamus, but ultimately the analysis there is the analysis that we think should apply here. All right, thank you, Mr. Barnes. Thanks to everybody. We'll reserve decision. Have a good day. That completes the business of the Court. With thanks to our courtroom deputy, Ms. Molina. I would ask that court be adjourned. Court stands adjourned.